# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID YOUNG, CHRISTOPHER HARRIS, MICHAEL L. TAYLOR, and AMERICAN INTERNATIONAL SECURITY CORPORATION,<br><br>Defendants. | **ORDER**<br><br>Case No. 2:12-CR-502-TC-DBP |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT J. LUSTYIK, JR., MICHAEL L. TAYLOR, and JOHANNES W. THALER,<br><br>Defendants. | **ORDER**<br><br>Case No. 2:12-CR-645-TC-DBP |

Defendant Michael Taylor, who is a defendant in two related criminal cases, seeks de

novo review of the magistrate judge's latest order[1] placing him in pre-trial detention. The court held a hearing on August 14, 2013. For the reasons set forth below, the court DENIES Mr. Taylor's request for release.

## I. PROCEDURAL BACKGROUND[2]

**A.     The Charges Against Mr. Taylor**

Mr. Taylor has been indicted in the District of Utah in two related cases, both of which are before this court. In the first indictment, issued on August 22, 2012, in <u>United States v. Young</u>, Case No. 2:12-CV-502-TC, Mr. Taylor was charged with multiple counts of criminal conspiracy, government procurement fraud,[3] bribery of a public official, wire fraud,[4] money laundering, and conspiracy to commit money laundering. The court refers to the <u>Young</u> case as the "Bribery Case."

In the second indictment, issued two months later on October 18, 2012, in <u>United States v. Lustyik</u>, Case No. 2:12-CV-645-TC, Mr. Taylor was charged with multiple counts of criminal conspiracy, honest services wire fraud, obstruction of justice, and obstruction of a department or agency proceeding. The court refers to the <u>Lustyik</u> case as the "Obstruction Case."

---

[1] The magistrate judge's latest order is the second of her two orders detaining him pending trial.

[2] Factual findings and evidence will be incorporated into the court's analysis.

[3] The government procurement fraud count against Mr. Taylor was recently dismissed on statute of limitations grounds. A motion to reconsider that dismissal is currently pending before the court.

[4] The Government has since stipulated to dismissal of three wire fraud counts against Mr. Taylor.

B.     **Mr. Taylor's Detention**

On September 20, 2012, following Mr. Taylor's arraignment in the Bribery Case, he was detained pending trial. (Docket No. 42 in 2:12-CR-502.) He was also detained in the Obstruction Case. (Docket No. 14 in 2:12-CR-645.) In both cases, United States Magistrate Judge Brooke Wells found that he was a flight risk and a danger to the community. (Docket No. 53.)[5] On October 26, 2012, Mr. Taylor challenged the magistrate judge's decision (see Docket No. 78),[6] and on November 1, 2012, this court ruled that he should not be released before trial. (See Docket No. 86.)[7] Upon interlocutory appeal by Mr. Taylor, the Tenth Circuit affirmed the decision in both the Bribery Case and the Obstruction Case. See United States v. Taylor, Case Nos. 12-4186 & 12-4187, 2013 WL 2466627 (10th Cir. June 10, 2013) (Docket No. 273)[8] [hereinafter "the 10th Circuit Opinion"].

C.     **Mr. Taylor's Most Recent Motion for Release**

Now Mr. Taylor brings a second request for pre-trial release (see June 17, 2013 Motion for Pretrial Release on Bail and Conditions, Docket No. 254),[9] contending that circumstances have changed since last fall and that the length of his detention is a violation of his due process

---

[5] Docket No. 16. The docket numbers in the main text refer to the docket in the Bribery Case (2:12-CR-502), unless otherwise noted. Because the same documents were filed in the Obstruction case (2:12-CR-645), the court lists the second docket number in a corresponding footnote for ease of reference.

[6] Docket No. 56.

[7] Docket No. 76.

[8] Docket No. 309.

[9] Docket No. 287.

rights. Judge Wells reviewed his second request, and on July 25, 2013, denied his motion. (See Docket No. 305.)[10] Mr. Taylor appealed the decision to this court, seeking de novo review. (See Taylor's Aug. 1, 2013 Mot. for De Novo Review (Docket No. 316).)[11] Having conducted the requested de novo review of the evidence, and considering the parties' arguments presented at the August 14, 2013 hearing, the court re-affirms its decision to detain Mr. Taylor pending trial.

## II. ANALYSIS

### A.     Re-Opening the Court's Review of Detention

Mr. Taylor asks the court to reconsider its decision to detain him under the Bail Reform Act, 18 U.S.C. § 3142, or, in the alternative, to find that the length of time Mr. Taylor has been detained has resulted in a violation of his due process rights.

The magistrate judge's first decision to detain Mr. Taylor was reviewed and approved by this court and then affirmed by the Tenth Circuit Court of Appeals. The Government contends that Mr. Taylor's second motion for pre-trial release should not be considered because the circumstances the court relied upon to detain him have not changed. The Government cites to the Bail Reform Act, which allows for re-opening of the issue only if

> information exists that was not known to the movant at the time of the hearing and that [such information] has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f) (emphasis added). Based on a review of the record, the court finds that Mr. Taylor has not produced new evidence (i.e., evidence that was not known or available to Mr.

---

[10]Docket No. 370.

[11]Docket No. 375.

4

Taylor at the time of the original detention hearing) that would prompt a re-opening of the initial detention decision under the Bail Reform Act.

But time has passed since Mr. Taylor's September 2012 detention and his October 2012 motion seeking release pending trial. Mr. Taylor has been in custody for eleven months. Because of the length of time, the court re-opens the detention issue and considers Mr. Taylor's due process challenge to his pre-trial detention. See United States v. Cos, 198 Fed. Appx. 727, 732, Case No. 06-2244, 2006 WL 2821376, **5 (10th Cir. Oct. 4, 2006) [hereinafter Cos I] (holding that court may reconsider detention decision in a fresh proceeding when defendant asserts a due process violation) (citing United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986)). (See also Taylor Mot. for Pretrial Release on Bail & Conditions (asserting due process claim) (Docket No. 254)[12]; Taylor Mot. for De Novo Review of Denial of Motion for Pretrial Release on Bail & Conditions (asserting due process claim) (Docket No. 316).[13])

**B.    Due Process**

When a court makes its initial detention decision under the Bail Reform Act, the court is not required to consider the length of detention. Cos I at 732. But when evaluating a claim that pre-trial detention in a particular case violates the defendant's Fifth Amendment due process rights, the court must determine whether the detention serves a permissible regulatory purpose or an impermissible punitive purpose. See United States v. Hudak, 77 Fed. Appx. 489, 489 (10th Cir. 2003) (citing Bell v. Wolfish, 441 U.S. 520, 536-37 (1979)); United States v. Theron, 782 F.2d 1510, 1516 (10th Cir. 1986) ("Although pretrial detention is permissible when it serves a

---

[12]Docket No. 287.

[13]Docket No. 375.

regulatory rather than a punitive purpose, we believe that valid pretrial detention assumes a punitive character when it is prolonged significantly."). In making this determination, the court "should consider: 1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." Cos I, at 732 (citing United States v. Millan, 4 F.3d 1038, 1043-47 (2d Cir. 1993)).

### 1. Length of Detention

The court must base its due process analysis on the length of time the defendant has been in custody plus "any non-speculative expected confinement." Millan, 4 F.3d at 1043. Mr. Taylor was detained on September 20, 2012. As of the date of this order, he has been in custody for approximately eleven months. A five-week trial is scheduled to begin on December 2, 2013. It is reasonably expected that by the end of trial, Mr. Taylor will have been in custody for approximately sixteen months.[14]

In general, courts have not identified a point past which a due process violation occurs. See, e.g., United States v. Salerno, 481 U.S. 739, 747 n.4 (1987) ("We intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."). Although the length of expected detention here weighs in Mr. Taylor's favor, the length of expected detention is not by itself sufficient to find a due process violation. United States v. Cos, Case No. CR 05-1619 JB, 2006 WL 4061168,

---

[14]At this stage of the proceedings, the court does not consider any additional time that may occur in United States v. Lustyik, 2:12-CR-645 (the Obstruction Case, which involves evidence covered by the Classified Information Procedures Act (CIPA), 18 U.S.C. app. 3). The court will revisit the issue, if raised by Mr. Taylor, at the close of the Bribery Case. In the meantime, his motion for pretrial release in the Obstruction Case is denied without prejudice.

at *9 (D.N.M. 2006) [hereinafter Cos II] ("[P]rolonged detention weighs in favor of a detainee's release. Alone, however, it is not enough to mandate his release."); Millan, 4 F.3d at 1044 ("Length of detention will rarely by itself offend due process.") (internal quotation marks and citations omitted). See also United States v. Stanford, 722 F. Supp. 2d 803, 810 (S.D. Tex. 2010) ("When the complexity of a case is a reason for the length of the detention, the detention continues to be regulatory in nature rather than penal.").

While due process cases may aid the court in its analysis, they are not dispositive of the court's decision. The court must make its determination based on the particular circumstances of the case. United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012) ("'[T]he due process limit on the duration of preventive detention requires assessment on a case-by-case basis[.]'") (quoting United States v. Gonzales Claudio, 806 F.2d 334, 340 (2d Cir. 1986)); United States v. Shareef, 907 F. Supp. 1481, 1484 (D. Kan. 1995) (analysis is on a case-by-case basis).

Some courts include in their analysis the potential sentence the defendant faces. Here, in the Bribery Case, Mr. Taylor, if convicted, faces a potential maximum sentence of twenty years. In the Obstruction Case, the Government estimates that, under the U.S. Sentencing Guidelines, Mr. Taylor, if convicted, could face up to 188 months (more than fifteen years) of incarceration (the statutory maximum is twenty years). A sixteen-month-long detention, while significant, is a relatively small fraction of the potential sentence Mr. Taylor faces. Moreover, other courts have found that detentions nearing or exceeding sixteen months did not amount to a due process violation. See, e.g, Cos II (nineteen months was not a due process violation); United States v. Hudak, 77 Fed. Appx. 489, Case No. 03-2203, 2003 WL 22317633 (10th Cir. Oct. 9, 2003) (fourteen months was not a due process violation); Millan, 4 F.3d 1038 (thirty months was not a

due process violation); Stanford, 722 F. Supp. 2d 803 (S.D. Tex. 2010) (nineteen months was not a violation of due process). Recognizing that each case poses its own particular facts leading to the court's decision, the cited cases are nevertheless instructive.

**2.    Delay**

The court is only considering the delays in the Bribery Case. As noted above, the court will revisit detention in the Obstruction Case (assuming Mr. Taylor files a renewed motion for pre-trial release) after trial in the Bribery Case.

Reviewing the docket in the Bribery Case, the court finds little in the way of unnecessary delay. In the Bribery Case, four defendants have been indicted, and the Indictment contains seventy-two counts,[15] including government procurement fraud (these counts have since been dismissed), bribery of a public official, wire fraud (three of these counts have since been dismissed), money laundering, and conspiracy. This white collar case, which has been highly contentious from the start, is complex and document-intensive. Gathering and producing discovery has been a long process for the Government because the amount of relevant documents is voluminous. Moreover, some of the documents contain attorney-client privileged information and classified information, all of which needed to be identified and redacted by qualified teams.

Mr. Taylor notes that the Government delayed in specifically identifying the evidence it intended to offer under Federal Rule of Evidence 404(b). Although there is truth to that statement, the docket shows that the delay was not as onerous as suggested by Mr. Taylor. On

---

[15] Of these seventy-two counts, two (government procurement fraud) were recently dismissed by the court on statute of limitations grounds. The Government also stipulated to the dismissal of wire fraud Counts 31, 32, and 33.

8

May 1, 2013, the Government filed its 404(b) notice of its intention to offer classified information relating to the Obstruction Case as evidence in the Bribery Case. (Docket No. 165.) Twenty-three days later, upon an order from the court, the United States supplemented and elaborated on the specific 404(b) evidence it intended to rely on. (Docket No. 195). But the general nature of the proposed 404(b) evidence was known to defense counsel last fall. According to the Government, it provided notice to defense counsel as early as November 1, 2012, of its general intent to use evidence of Mr. Taylor's alleged obstruction in the Obstruction Case. (See Docket No. 195 n.1.) The Government again notified defense counsel of its intent in an April 3, 2013 email. (Id.) Accordingly, the May notice was not a surprise to the Defendants. (Ultimately, the court ruled that the 404(b) evidence would not be admitted at trial in the Bribery Case.)

There was one unforeseen delay in June 2013 that, according to the Government, was caused by a glitch in a computer program. Because of the glitch, a portion of discovery had not been turned over to the Defendants. But within weeks of the glitch, the Government said those documents were available for review. At the Defendants' request (renewed as recently as August 14, 2013), the Government is reviewing those documents to remove duplicates and adjust Bates numbers to make them more easily identifiable in the giant set of discovery already produced to the Defendants.

Some delays originated with Mr. Taylor. In December 2012, counsel for Mr. Taylor requested that a trial date not be set until defense counsel had a chance to review the voluminous material and determine how long it would take to prepare for trial. At that point, Mr. Taylor's counsel asked for a three-month delay before setting the trial date. Also in December 2012, Mr.

Taylor switched attorneys. Then in February 2013, the Defendants, including Mr. Taylor, acknowledged during a status conference that the case was complex and that there was a large amount of discovery to review. The Defendants asserted that they would need 180 days to prepare for trial. In February 2013, the court scheduled a month-long trial to begin on August 5, 2013. (In May 2013, Co-Defendant Young moved for a sixty-day continuance, but that was not joined in by Mr. Taylor.) Later, when it became apparent that the August 5, 2013 trial date was not feasible and would need to be rescheduled, Mr. Taylor objected to any further continuances and requested that the court reconsider its decision to detain Mr. Taylor pending trial. The court has since scheduled the trial to begin December 2, 2013.

Given the breadth and complexity of this case and the amount of discovery, the majority of delays by the Government is not unusual or unexpected. The prosecution lacks significant responsibility for unnecessary pre-trial delay. And some delays are attributable to Mr. Taylor. Altogether, the court finds that the delay factor does not weigh in favor of either party.

### 3. Strength of the Evidence Supporting Detention

#### a. Risk of Flight

Under the Bail Reform Act, the Government must prove risk of flight by a preponderance of the evidence. United States v. Cisneros, 328 F.3d 610, 616 (10th Cir. 2003). But at a fresh proceeding in which the detained defendant asserts that his due process rights have been violated, "more is required of the government than is mandated by [the Bail Reform Act]." United States v. Accetturo, 783 F.2d 382, 388 (3d Cir. 1986), quoted in Cos I at 732.[16]

---

[16]Mr. Taylor suggests that the court may consider the evidence supporting the case on the merits. (See Taylor's Aug. 1, 2013 Mot. for De Novo Review at 9 (Bribery Case Docket No.

10

The court first notes that the United States provided more than a preponderance of evidence at the initial detention hearing and subsequent appeals under the Bail Reform Act. Indeed, the Tenth Circuit noted that the Government "offered ample evidence that Mr. Taylor presents a flight risk." 10th Circuit Opinion at *1. Arguably the Government exceeded its burden the first time around, and the requirement of "more" was satisfied early on. But the Government has provided even more evidence in this proceeding. In either circumstance, the Government has met its burden of showing that the detention serves a procedural, rather than a punitive, purpose.

The Government points out that Mr. Taylor, who is fluent in Arabic, has traveled extensively in other countries, particularly those in North Africa and the Middle East. He is a permanent resident of Lebanon. His wife is a Lebanese citizen and one of his sons attends school in Lebanon. He has a home in Lebanon. And the United States does not have an extradition treaty with Lebanon. See 18 U.S.C. § 3181 Historical & Statutory Notes (in list of bilateral treaties between the United States and other countries, Lebanon is not one of those countries).

Before he was indicted, Mr. Taylor had access to significant amounts of money. For

---

316; Obstruction Case Docket No. 375 ) (stating that "the substantial diminishment in the weight of the evidence on the underlying charges" is a relevant factor to consider). In cases where the court has weighed the strength of the evidence against the length of detention, the balance of evidence appeared to be more clear cut than it is here. For example, courts considered the factor when, on the one hand, the court had granted a motion to suppress evidence against the defendant, or, on the other hand, the evidence was very strong against the defendant. See Cos II at *15-*16; United States v. Shareef, 907 F. Supp. 1481, 1484-85 (D. Kan. 1995). Here, the merits of this complex case are very much in contention. Although this factor could be useful in a court's analysis of due process concerns, it is of little help here. Accordingly, the court will only consider the evidence regarding the issue of whether Mr. Taylor presents a risk of flight and a danger to the community. The court will not consider the merits of the Government's case against Mr. Taylor.

example, the Government seized over $5 million from a bank account to which Mr. Taylor had access. The Government persuasively notes that

> should [Mr. Taylor] be released, he is likely to have access to the necessary resources to flee to Lebanon and take his family with him. Investigators in the Utah case have documented hundreds of thousands of dollars wired from [Mr. Taylor's company (and co-defendant) AISC] to various Lebanese bank accounts in the past several years, including one in the name of [Mr. Taylor's] wife and one in the name of one of [Mr. Taylor's] sons. [Mr. Taylor] also has access to funds not held in his name or in the names of family members. As the Indictment [in the Obstruction Case] alleges, as part of the conspiracy, [Mr. Taylor] arranged to have $10,000 wired from an account in Lebanon, not in his name, to [a co-defendant in the Obstruction Case]. Dkt. # 39, at ¶ 30. There is simply no way to determine precisely what assets Taylor may have overseas or otherwise, including in Lebanon. What is clear, however, is that [Mr. Taylor] has the ability and access to assets to flee should he choose to do so.

(United States' Response (Docket No. 292)[17] at 27-28.)

As noted above, if Mr. Taylor is convicted, he faces a lengthy sentence. This concerns the court because it creates a powerful motive for Mr. Taylor to leave the United States and go to Lebanon.

Moreover, in addition to Mr. Taylor's extensive travel in and familiarity with foreign countries,[18] he has the knowledge, skills, and access to resources that would be highly useful to him in an effort to leave the United States if he so chooses. As the Government notes,

> [Mr. Taylor's] business revolves around identifying security gaps and threats. His company has an extensive network of clandestine security professionals, and specialized knowledge of aviation and port security systems. AISC's website describes its personnel as "selected from the elite ranks of military, law

---

[17] Docket No. 314.

[18] Mr. Taylor's argument that the government mischaracterized the purpose of Mr. Taylor's 2012 travel to the Middle East misses the point. The fact remains that Mr. Taylor is quite familiar with international travel and is comfortable operating his business outside the country.

enforcement, corporate management, and government" making up a team that draws on "experience working in extreme conditions in over 100 countries."

(U.S.'s Resp. to Mot. for De Novo Review (Docket No. 343)[19] at 6.) The Government further notes that Mr. Taylor's business website

touts its airport security system expertise including "the latest electronic detection and surveillance systems" and describes the vulnerability of ports, while bragging about its ability to secure ports. While attempting to secure the release of kidnapped journalist David Rohde in Afghanistan, [Mr. Taylor] reportedly bribed Taliban guards.[20] He also described to Rhode's [sic] wife AISC's experience in 'snatch and grab situations' and bartering medical supplies and vehicles for kidnapping victims.

(Id. 5-6.)

Mr. Taylor offers a number of conditions by which he would abide if he was released. The court finds that these conditions are not sufficient to insure that Mr. Taylor does not flee the jurisdiction.[21]

First, Mr. Taylor says that, in addition to relinquishing his own passport, his wife and son have offered to surrender their passports. The court is concerned that the United States may not be legally able to limit the travel of persons who have not been charged with a crime. In addition, Mr. Taylor's "access to elite security professionals, experience bribing foreign nationals, and knowledge of entry and exit point security system vulnerabilities, renders traditional bail provisions such as surrendering one's passport ineffective." (Id. at 6-7.)

---

[19]Docket No. 390.

[20]See U.S.'s Response at 33 (citing D. Rohde & K. Mulvihill, A Rope and a Prayer: A Kidnapping from Two Sides 99 (2010); Brian Ross, Taliban Guards 'Bribed' to help David Rohde's Daring Escape Plan, abcNews.com (June 23, 2009)).

[21]Mr. Taylor offers a report of psychiatrist Trent Holmberg, who did a psychiatric evaluation of Mr. Taylor and issued an "Independent Psychiatric Examination Report." The Report is not helpful to Mr. Taylor because Dr. Holmberg's conclusions are benign.

13

Second, Mr. Taylor suggests that active GPS monitoring and a condition that he travel only between Massachusetts (his home) and Utah would assure his appearance in court. But the active GPS monitoring is not full-proof. The monitoring bracelet may be removed. In that situation, Mr. Taylor (who will not be accompanied by any law enforcement official and who is not the typical defendant) would be untraceable by the GPS system. Given Mr. Taylor's planning skills, experience with clandestine operations, the ease with which he travels internationally, likely access to funds necessary to travel, and a reported willingness to bribe officials, his ability to evade law enforcement (whether he leaves the country through special channels or not) is substantial.

Third, his offer to forfeit the $5.2 million seized by the Government is a hollow offer. If he succeeds on his anticipated motion in the Government's civil forfeiture case (Case No. 2:11-CV-806-DAK (D. Utah)), a good portion of that money will be used to pay his attorneys' fees. Given his past access to significant amounts of money and to individuals and businesses who have significant amounts of money at their disposal (even assuming he has no other bank account hidden from the Government), as well as his ability to conduct a profitable business in the Middle East (indeed he set up another business in 2012 before returning to the United States to face the charges),[22] losing the forfeited money is a small price to pay for freedom from prosecution.

Fourth, he offers his father's house as part of the bond to be submitted upon release. But

---

[22] See United States's Response (Docket No. 292 in Bribery Case, Docket No. 314 in Obstruction Case) at 26 (citing Gov't Ex. 15); id. (citing Gov't Ex. 18) (containing email request from Mr. Taylor to FBI agents Lustyik and Bachour before arraignment in the Bribery Case to send a letter to the magistrate judge in Utah "saying you need me to keep my passport . . . .").

14

the value of that house is relatively small compared to Mr. Taylor's resources. Supporting his father in another fashion is not out of the realm of possibility.

Fifth, in his briefs, he offers to waive extradition. But this too is hollow. If he arrives in Lebanon, the United States's ability to enforce that contractual waiver is significantly hampered.

Mr. Taylor is a high flight risk. Given the problems identified above, the court is convinced that the conditions proposed by Mr. Taylor will not assure his appearance in court to face the charges.

        b.       <u>Danger to the Community</u>

The Government must prove by clear and convincing evidence that Mr. Taylor, if released, would pose a danger to the community. <u>United States v. Cisneros</u>, 328 F.3d 610, 616 (10th Cir. 2003). Here, the Government contends that Mr. Taylor poses a danger to the community because of his past obstruction of justice as well as his potential for future obstruction of justice. Danger to community may include non-violent propensities, such as a record of obstruction of justice. <u>See, e.g.</u>, <u>Millan</u>, 4 F.3d at 1048 (obstruction of justice by intimidation of witnesses was danger to community); <u>United States v. Provenzano & Andretta</u>, 605 F.2d 85 (3d Cir. 1979) (non-physical harm of corrupting a union was danger to community); <u>United States v. Shareef</u>, 907 F. Supp. 1481, 1486 (D. Kan. 1995) (the potential for economic harm was a danger to the community).

The Government points to the Indictment in the Obstruction Case as evidence of Mr. Taylor's ability and willingness to obstruct justice. Although Mr. Taylor points out that the allegations in an indictment are not evidence, in this particular case the Indictment consists of numerous statements made by the Defendants in the Obstruction Case, including Mr. Taylor, in

15

emails and text messages. Those messages, which speak for themselves, show a history of activities intended to obstruct justice.

The Government also points to evidence that Mr. Taylor has bribed officials in the past to get what he needs to accomplish his mission (in this case, potentially obstructing the Government's prosecution of him). This evidence is new, and it bolsters the earlier finding of this court and the Tenth Circuit that the Government has shown by clear and convincing evidence that Mr. Taylor poses a danger to the community.

Furthermore, Mr. Taylor appears to have the desire and ability to obstruct justice even while incarcerated. The Government offers evidence of a three-way call from jail to an active cooperating source as well as an indirect message through Mr. Taylor's office manager to an active cooperating source telling the source that Mr. Taylor would be out of jail soon and that he wanted to see how the source was doing. (See United States's Response at 31-32 (citing Gov't Ex. 19); United States's Supplemental Brief (Docket No. 294)[23] at 3 (citing Gov't Ex. 23).) If Mr. Taylor is released, his ability to obstruct justice will only increase.

For all these reasons, the court finds that the Government has presented clear and convincing evidence that Mr. Taylor poses a danger to the community.

## CONCLUSION

The evidence in the record (which includes more evidence than what was presented at the initial detention proceedings) weighs in favor of finding that there are no conditions of release that will reasonably assure the appearance of Mr. Taylor at required court proceedings or assure

---

[23]Docket No. 345.

the safety of the community. As the Tenth Circuit said upon denying Mr. Taylor's interlocutory appeal, it saw "no error in the district court's finding that there are no release conditions that could be imposed on Mr. Taylor that would assure the safety of the community. The government presented evidence of the extent to which Mr. Taylor was willing to go to derail the investigation and prosecution of the first indictment against him." 10th Circuit Opinion at *1. Now the court is faced with even more evidence.

The court finds that the Government has established that the pre-trial detention of Mr. Taylor serves a regulatory, not a punitive, purpose. Moreover, the expected length of detention of 16 months does not exceed the bounds of due process in the Bribery Case.

## **ORDER**

For the reasons set forth above, the court ORDERS as follows:

1. Defendant Michael Taylor's Motion for Pretrial Release on Bail and Conditions (Docket No. 316 in 2:12-CR-502) is DENIED.

2. Defendant Michael Taylor's Motion for Pretrial Release on Bail and Conditions (Docket No. 375 in 2:12-CR-645) is DENIED WITHOUT PREJUDICE.

DATED this 22nd day of August, 2013.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
U.S. District Court Judge