UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF )<br>THE EXTRADITION OF )<br>MICHAEL L. TAYLOR )<br>) | Case No. 20-mj-1069-DLC |
| IN THE MATTER OF )<br>THE EXTRADITION OF )<br>PETER M. TAYLOR )<br>) | Case No. 20-mj-1070-DLC |

**DEFENDANTS' REPLY TO GOVERNMENT'S RESPONSE**

Defendants/Relators Michael L. Taylor and Peter M. Taylor, through the undersigned counsel, hereby file this reply to the Government's "Response to New Arguments Raised by Defendants in Support of Their Motion to Quash Arrest Warrants or for Release from Detention." (Case No. 4:20-mj-01069, Doc. 32; Case No. 4:20-mj-01070, Doc. 31; hereinafter, "Response".)

*First*, none of the points or arguments advanced by the government in its Response are new or any different from matters the parties already have addressed in their papers or during the hearing on June 22, 2020. Today's filing by the government is little more than an unauthorized sur-reply brief which does not even identify or respond to anything new in the Taylors' reply brief, but merely reiterates arguments the government has previously made.

*Second*, the government's "complexity" argument misses the Taylors' point and conflates other arguments. In *Matter of Extradition of Drumm*, 150 F. Supp. 3d 92 (D. Mass. 2015), this Court rejected a relator's argument that the "complexity of the underlying charges" would delay the proceedings by requiring the parties to "litigate the underlying criminal charges or to engage in extensive discovery for the extradition hearing." *Id.* at 99. *Drumm* did not involve a highly technical dispute, as here, regarding the applicability of an underlying foreign law. In fact, the

relator in *Drumm* did not even advance the likelihood of success on the merits (on either factual or legal grounds) as a special circumstance warranting release on bail. *See id.* at 97-100.

*Third*, the government's rejoinder to Mr. Marino's declaration (which removed any doubt that the Taylors returned to the United States knowing full well that Japan could, and was likely to, request their extradition) continues to press an argument that strains logic. If the Taylors intended to flee, why would they go to one of only two places in the world from which Japan could seek to extradite them?[1] That would make no sense.

The government attempts to support its argument by citing to *Man-Seok Choe v. Torres*, 525 F.3d 733 (9th Cir. 2008), but that case is inapposite and the government completely ignores that what the Taylors did here in returning to Massachusetts *was the exact opposite* of what the relator in *Choe* did in traveling to Los Angeles.

While *Choe* was an extradition case, the issue the Ninth Circuit was addressing when it used the language the government quotes was not risk of flight but a question of tolling of the statute of limitations. Choe was a Korean citizen who had left South Korea for California upon learning he was under criminal investigation. He took up residence in Los Angeles, but South Korea eventually sought to extradite him. 525 F.3d at 736, 741.

One of the arguments Choe made in defense to the extradition request was that the prosecution would be barred by the statute of limitations if it had been committed in the United States, which was an exception to extradition under the treaty. The magistrate judge, and ultimately the Ninth Circuit, rejected that argument by finding that the U.S. statute of limitations would have been tolled under 18 U.S.C. § 3290 because Choe had fled from justice. 525 F.3d at 740-41. For tolling to apply, the government had to prove Choe (1) "inten[ded] to avoid arrest or

---

[1] Japan only has extradition treaties with the United States and South Korea.

prosecution" and (2) committed a "volitional act" of concealment. *Id.* at 741. The court held that, based on the evidence, when he left South Korea in 1999 (within the statute of limitations) he "was aware that he was the subject of a criminal investigation … and, consequently, that he did so in order to avoid being taken into custody." *Id.*

Choe, however, argued that tolling did not apply because "he did not conceal himself" but "lived openly in Los Angeles, operated his business in his own name and applied for U.S. citizenship." 525 F.3d at 741. In addressing this argument, the Ninth Circuit made the statement quoted by the government here (*i.e.*, "He may have felt safe enough being thousands of miles away from the government that was seeking to prosecute him."), but the court's point was that the fact that he could have taken additional steps to conceal his whereabouts did not mean he was not a fugitive from justice because his "volitional act" of concealment "occurred when he left Korea clandestinely and placed himself beyond the jurisdiction of the Korean authorities." *Id.* Accordingly, the requirement for tolling was satisfied by his departure from South Korea irrespective of anything he else he did, or did not do, once outside South Korea.

Setting aside the very different issues in the two cases (here, risk of flight; in *Choe*, tolling of the statute of limitations), here we have *the exact opposite* scenario from that presented in *Choe*. Choe left South Korea clandestinely to place himself beyond the jurisdiction of the Korean authorities. The Taylors left Lebanon openly to place themselves *within the reach of the Japanese authorities* in the United States where their extradition could be sought. The Taylors' actions thus rebut any suggestion that they have any intention of fleeing—which they do not.

*Finally*, we note that the government's continued insistence that Peter Taylor's planned departure for Lebanon on May 20, 2020 was an attempt to flee not only defies logic, but runs counter to the government's own argument that Peter Taylor is an "expert escape artist." No one

3

intending to flee, much less an "expert escape artist" intending to do so, would make their escape by commercial air travel, booked in his own name 10 days in advance.

For these and all of the reasons previously stated, the Court should grant the Taylors' Motion, quash the provisional arrest warrants, and release them forthwith. In the alternative, the Court should grant the Taylors release, with reasonable conditions, pending the outcome of a final extradition determination.

Dated: June 23, 2020

Respectfully submitted,

By their attorneys,

*/s/James P. Ulwick*
James P. Ulwick (*pro hac vice*)
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, MD  21202
Tel. (410) 752-6030
julwick@kg-law.com

*Counsel for Peter M. Taylor*

*/s/ Tillman J. Finley (by permission)*
Daniel Marino (*pro hac vice*)
dmarino@marinofinley.com
Tillman J. Finley (*pro hac vice*)
tfinley@marinofinley.com
MARINO FINLEY LLP
800 Connecticut Avenue, N.W., Suite 300
Washington, DC  20006
Tel:  202.223.8888

*Counsel for Michael L. Taylor*

*/s/  Paul V. Kelly (by permission)*
Paul V. Kelly (BBO No. 267010)
Jackson Lewis, P.C.
75 Park Plaza
Boston, MA  02110
Tel (617) 367-0025
paul.kelly@jacksonlewis.com

*/s/ Abbe David Lowell (by permission)*
Abbe David Lowell (*pro hac vice*)
Christopher D. Man
Zachary B. Cohen
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
Tel. (202) 282-5875
adlowell@winston.com

*Counsel for Michael and Peter Taylor*

*/s/ Robert Sheketoff (by permission)*
Robert Sheketoff (BBO# 457340)
One McKinley Square
Boston, MA 02119
Tel. (617) 367-3449
sheketoffr@aol.com

*Counsel for Michael L. Taylor*

**CERTIFICATE OF SERVICE**

       I, James P. Ulwick, certify that service of this motion was made on the above date by and through the ECF filing system.

                                                */s/  James P. Ulwick*_____
                                                James P. Ulwick