UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF
THE EXTRADITION OF
PETER M. TAYLOR

Case No. 20-mj-1070-DLC

**MOTION FOR RECONSIDERATION OF EXTRADITION CERTIFICATION AND ORDER OF COMMITMENT**

Respondent Peter M. Taylor respectfully asks the Court to reconsider its September 4, 2020 Extradition Certification and Order of Commitment (Dkt. 51, hereinafter "Certification"), specifically its finding that there is probable cause to believe that Peter Taylor violated Article 103 of the Japanese Penal Code. We do not ask the Court to revisit the issues relating to the interpretation and application of Article 103, but instead to assess anew the sufficiency of the factual record presented to the Court in light of Japan's recent correction of one of the few assertions made with respect to the conduct of Peter Taylor. Specifically, Japan previously had alleged in particular detail that, on December 28, 2019, Peter Taylor provided Carlos Ghosn Bichara with an extra key to his room at the Grand Hyatt Tokyo, which Japan asserted necessarily must have happened because the following day Mr. Ghosn was able to operate the hotel elevator and access the ninth floor on his own. However, Japan has now advised that, upon further investigation, a room key was not needed to operate the elevator. (Ex. A.) As such, Japan's assertion that Peter Taylor necessarily must have given Mr. Ghosn a key was based on a premise now revealed to be inaccurate.

This revelation is significant because it removes from the evidentiary equation the only act in which Peter Taylor was alleged to have engaged which enabled Mr. Ghosn to do anything he would not otherwise have been able to do on the date of his departure from Japan. Accordingly, as a result of Japan's correction, the record as revised does not contain sufficient evidence to

support a finding of probable cause that Peter Taylor committed a violation of Article 103. We therefore respectfully request that the Court schedule a hearing and reconsider its Certification and find that the remaining evidence presented by the government fails to establish probable cause that Peter Taylor committed the alleged offense for which extradition is sought.

## PROCEDURAL STATUS AND THE COURT'S AUTHORITY TO RECONSIDER

Peter Taylor's petition for a writ of habeas corpus, filed jointly with his father and challenging this Court's Certification as well as the lawfulness of the Secretary of State's action with respect to this matter, currently is pending before Judge Indira Talwani. *See* Case No. 4:20-cv-11272-IT.[1] However, we note that an extradition order is not considered a final order. *Collins v. Miller*, 252 U.S. 364, 369-70 (1920). As a result, the pendency of a habeas petition does not deprive the extradition court of jurisdiction. For the same reason, extradition orders also are not subject to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. *See Lingad v. Napolitano*, 313 Fed. Appx. 72, 74 (9th Cir. 2009). Instead, a magistrate judge in an extradition case has "inherent judicial power" to reopen the evidence and reconsider his or her ruling at any time so long as it still has jurisdiction over the respondent. *Id.* (citing *City of Los Angeles v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001)); *see also Skaftouros v. United States*, 667 F.3d 144, 153 n.13 (2d Cir. 2011) (recognizing moving original extradition court to reopen the extradition proceedings as permissible procedural route to address new developments); *United States v. Pena-Bencosme*, No. 05-M-1518 (SMG), 2007 WL 3231978 at *1 (E.D.N.Y. Oct. 30, 2007) (upon petitioner's raising newly-discovered evidence, habeas court had petitioner move to reopen extradition proceeding); *Na-Yuet v. Hueston*, 690 F. Supp. .1008, 1010-12 (S.D. Fla. 1988)

---

[1] Out of an abundance of caution, we are also moving Judge Talwani for a stay of the habeas proceedings pending the Court's ruling on our reconsideration request.

(remanding case to extradition judge to consider newly-discovered evidence).  The Taylors remain in federal custody at the Norfolk County Correctional Center, so the Court retains jurisdiction over them.

## ARGUMENT

Under the U.S.-Japan Extradition Treaty, extradition may be certified only where "the request for extradition … [is] accompanied by … such evidence as would provide probable cause to suspect, according to the laws of the requested Party, that the person sought has committed the offense for which extradition is requested."  (Treaty Art. VIII, § 3.)  It is well established that "[t]he quantum of information which constitutes probable cause [is] evidence which would warrant a man of reasonable caution in the belief that a felony has been committed."  *Wong Sun v. United States*, 371 U.S. 471, 479 (1963) (quotation and citation omitted).  As the Court put it in its Certification ruling, "[t]he evidence is sufficient and probable cause is established if a person of ordinary prudence and caution can conscientiously entertain a reasonable belief in the probable guilt of the accused."  (Dkt. 51 at 6 (citing *Gerstein v. Pugh*, 420 U.S. 103, 11 (1975).)

In its Certification, the Court recited certain factual assertions advanced by the government and found the factual assertions with respect to the Taylors' alleged conduct not to be disputed.  (Dkt. 51 at 6-8.)[2]  Of the many factual assertions set forth by the U.S. and Japanese governments,

---

[2] While it is true that the conduct allegations were not contested for purposes of the extradition proceedings, we must clarify that a number of the allegations are certainly denied and thus are disputed as a factual matter.  Within the context of these extradition proceedings, however, we did not contest these allegations because the law does not permit the accused to offer evidence that contradicts that offered by the government. *See, e.g.*, *Collins v. Loisel*, 259 U.S. 309, 316-17 (1922); *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991).  The defendant "may be permitted to offer explanatory testimony, but may not offer proof which contradicts that of the demanding country."  *Messina v. United States*, 728 F.2d 77, 80 (2d Cir. 1984); *see also Eain v. Wilkes*, 641 F.2d 504, 511 (7th Cir. 1981) ("An accused in an extradition hearing has no right to contradict the demanding country's proof or to pose questions of credibility as in an ordinary trial, but only to offer evidence which explains or clarifies that proof.").

3

only a handful involved Peter Taylor.  Significantly, there is no allegation that Peter Taylor was involved in, or even present for, any of the events that are alleged to have taken place at Kansai International Airport on the night of December 29, 2019.  Indeed, the government acknowledges that Peter Taylor had departed Japan on a commercial flight for China several hours earlier.  (Dkt. 1 ¶ 7(i); Dkt. 47 at 5; Dkt. 47-6, Part III(11).)

Instead, therefore, the Extradition Complaint (Dkt. 1, ¶ 7(h)), the Government's Memorandum of Law in Support of Extradition (Dkt. 47 at 3), and Japan's extradition request (Dkt. 47-6, Part III(7), n.8 & (11)) all placed emphasis upon the assertion that, on December 28, 2019, Peter Taylor provided Mr. Ghosn with an extra key to his room at the Grand Hyatt Tokyo.  According to the allegations, this action by Peter Taylor enabled Mr. Ghosn, on the following day (the date of his departure from Japan), to "operate the hotel elevator and go to the ninth floor by himself, an action that required a key to a room on the ninth floor."  (Dkt. 47 at 3.)  Japan's extradition request reasons that "it is obvious that [Mr. Ghosn] had the room key at the time" he went to the ninth floor on December 29, 2019, because "Ghosn had no other option but to get the room key from Peter Taylor, who stayed at the room.  This is only when Peter Taylor met with Ghosn after Peter Taylor's check-in."  (Dkt. 47-6, Part III(7) n.8.)  It was on the ninth floor of the Grand Hyatt Tokyo that Mr. Ghosn met up with Michael Taylor and George Zayek on December 29, and it was from there that Mr. Ghosn, Michael Taylor and George Zayek departed for their journey to Kansai International Airport and ultimately out of Japan.  (*See* Dkt. 47 at 6; Dkt. 47-6, Part III(7), n.8 & (12).)

Peter Taylor, however, is not alleged to have participated in any of these actions.  Instead, at approximately 7:00 p.m. on December 29, 2019, Peter Taylor separately and alone departed Narita Airport outside of Tokyo on a flight to China.  (Dkt. 47 at 5; Dkt. 47-6, Part III(11).)  It was

4

not until roughly four hours later, and more than 600 km away, that Mr. Ghosn passed through the security checkpoint at Kansai International Airport outside of Osaka without being screened and departed on a private jet for Turkey. (Dkt. 47 at 6; Dkt. 47-6, Part III(12).) There is no allegation that Peter Taylor participated in, or was even present for or knew of, any of these later events.

Accordingly, the sole action alleged to have been committed by Peter Taylor which enabled Mr. Ghosn to do anything was his alleged provision of an extra room key to Mr. Ghosn. According to the allegations, this action by Peter Taylor allowed Mr. Ghosn, on December 29, 2019, to operate the elevator and proceed to the ninth floor of the Grand Hyatt Tokyo by himself where he met Michael Taylor and George Zayek. (*See* Dkt. 47 at 6; Dkt. 47-6, Part III(7), n.8 & (12).) This allegation was based upon a statement by a receptionist at the Grand Hyatt Tokyo. (Dkt. 47-6, Part III(7); *see also* EX-Taylor, M.-00764.)

However, in a letter dated December 21, 2020, the Tokyo District Public Prosecutors Office advises that it has interviewed another employee of the Grand Hyatt Tokyo who has stated that a room key *was not needed* to operate the elevator and enter the ninth floor on December 29, 2019. (Ex. A; Case No. 4:20-cv-11272-IT, Dkt. 67-1.) Japan thus has notified the U.S. Department of Justice "that further investigation has revealed that a room key was not necessary to access the Grand Hyatt's 9th floor where Peter Taylor was staying." (*Id.*)

Removing these facts from the collection of allegations advanced by the government in support of probable cause leaves the allegations against Peter Taylor insufficient to establish probable cause. As to Peter Taylor, the remaining evidence presented with respect to his conduct is limited to the following:

- In the months prior to December 29, 2019, Peter Taylor traveled to Japan three times (*i.e.*, July 8-11, August 21-23 and December 6-7), and met with Mr. Ghosn seven times (Dkt. 47 at 4; Dkt. 47-6, Part III(6));

5

- On December 28, 2019, Peter Taylor traveled to Japan and checked into Room 933 at the Grand Hyatt Tokyo (Dkt. 47 at 4; Dkt. 47-6, Part III(7));

- Later on the afternoon of December 28, Peter Taylor met with Mr. Ghosn in the lobby of the Grand Hyatt Tokyo (Dkt. 47 at 4; Dkt. 47-6, Part III(7));

- On the afternoon of December 29, Mr. Ghosn left his house, walked to the Grand Hyatt Tokyo and went to Peter Taylor's room (Dkt. 47 at 4; Dkt. 47-6, Part III(11));

- Also on the afternoon of December 29 at the Grand Hyatt Tokyo, Peter Taylor received two suitcases from Mr. Ghosn's driver (Dkt. 47 at 5; Dkt. 47-6, Part III(10));

- Later in the afternoon of December 29, Peter Taylor met Michael Taylor and George Zayek at the entrance of the Grand Hyatt Tokyo and the three proceeded together to Peter Taylor's room (Dkt. 47 at 5; Dkt. 47-6, Part III(11));

- Shortly thereafter, all four men exited Peter Taylor's room and separated with Michael Taylor and Messrs. Zayek and Ghosn departing for Osaka with one of the suitcases that had been delivered by Mr. Ghosn's driver and Peter Taylor proceeding alone with the other suitcase to Narita Airport (Dkt. 47 at 5; Dkt. 47-6, Part III(11)); and

- At approximately 7:00 p.m. on December 29, 2019, Peter Taylor departed Narita Airport outside of Tokyo on a flight to China (Dkt. 47 at 5; Dkt. 47-6, Part III(11)).

This is now the extent of the allegations presented by the government in support of the assertion that there is probable cause that Peter Taylor committed a violation of Article 103 of the Japanese Penal Code. But these allegations (even if accepted as entirely accurate) do not establish that *Peter Taylor* committed each element of the alleged offense.

Probable cause in extradition proceedings is determined by the same standards used in federal preliminary hearings. *See Sindona v. Grant*, 619 F.2d 167, 175 (2d Cir. 1980). In making this determination, courts apply a "totality of the circumstances analysis" and use a "flexible, common-sense standard." *Illinois v. Gates*, 462 U.S. 213, 238-40 (1983). However, to establish probable cause the government must prove each element of the alleged offense is more probable than not. *United States v. Pettiford*, 934 F. Supp. 479, 482 n.6 (D. Mass. 1996). "Probability is the touchstone." *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir. 1997). As explained by the First Circuit:

> Probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed. Mere suspicion, rumor, or strong reason to suspect wrongdoing are not sufficient.

*United States v. Vigeant*, 176 F.3d 565, 569 (1st Cir. 1999) (internal quotations and citations omitted).

Presupposing that Mr. Ghosn qualifies as a "criminal" within the meaning of Article 103 and further assuming that concealing Mr. Ghosn in a large black box and assisting him to bypass immigration screening before departing on a jet would constitute a violation of Article 103 where Mr. Ghosn was released on bail, there was no warrant for Mr. Ghosn's arrest and the authorities were not seeking to apprehend him (which we dispute for all of the reasons previously detailed), there would still be no probable cause that Peter Taylor himself violated Article 103. There is no allegation, much less any evidence, that Peter Taylor harbored (*i.e.*, hid or concealed) Mr. Ghosn at any point. Nor is there any evidence that Peter Taylor himself did anything to enable Mr. Ghosn's "escape"—he is not alleged to have brought Mr. Ghosn the box in which he concealed himself, he is not alleged to have assisted Mr. Ghosn into the box, he is not alleged to have transported that box to the airport and/or past immigration screening, and he is not alleged to have accompanied Mr. Ghosn or the box onto the airplane. Peter Taylor is not even alleged to have been present for any of the foregoing events; indeed, he is alleged to have at all times been more than 600 km away from the scene of the crime and, in fact, to have departed Japan altogether roughly four hours before it allegedly occurred.

All that now remains of the allegations against Peter Taylor is that he met with Mr. Ghosn on several occasions; that he checked into a hotel room in Tokyo on December 28, 2019; that he received two suitcases in Tokyo from Mr. Ghosn's driver; that he greeted his father and George Zayek in the lobby of his Tokyo hotel on December 29; and that he left his hotel room at the same

7

time as his father and Messrs. Ghosn and Zayek, but went his separate way and did not accompany the group beyond that point. But none of these acts by Peter Taylor amount, individually or collectively, to harboring Mr. Ghosn or enabling his escape several hours after Peter Taylor last saw him. Indeed, nothing in the remaining allegations establish that *Peter Taylor* took any action *which enabled Mr. Ghosn to do anything*. The assertion that Peter Taylor had given Mr. Ghosn an extra key to his room which enabled Mr. Ghosn to reach the ninth floor at least alleged that Peter Taylor did something which in turn enabled Mr. Ghosn to do something he would not otherwise have been able to do during the events of the day of his departure from Japan. Of course, it was not unlawful nor was it a violation of Mr. Ghosn's bail conditions for him to take an elevator to the ninth floor of the Grand Hyatt Tokyo; so Peter Taylor was not ever alleged to have enabled Mr. Ghosn to do anything illegal, but previously he was at least alleged to have enabled Mr. Ghosn to have done something. But that is no longer the case.

The absence of evidence that Peter Taylor himself committed any act that enabled Mr. Ghosn's alleged escape (or even any step by Mr. Ghosn towards that escape) is fatal. The charge for which Japan seeks to extradite Peter Taylor is harboring or enabling the escape of a criminal. To establish probable cause, Japan must show probable cause both that the offense was committed *and that Peter Taylor himself committed it*.

Significantly, Peter Taylor is not, and cannot be, alleged to have conspired to commit a violation of Article 103. Japanese law does not criminalize conspiracy to commit a violation of Article 103. Japan had no criminal conspiracy law at all until 2017. *See generally* Chris Coulson, *Criminal Conspiracy Law in Japan*, 28 U. MICH. J. INT'L LAW 863, 864 (2007) ("Japan is one of several [Convention against Transactional Organized Crime] signatory countries that has no criminal conspiracy law, nor is participation in an organized criminal group a crime in Japan.").

After numerous unsuccessful attempts to enact a criminal conspiracy law, *see id.* at 868-77, 887-93, a limited prohibition on criminal conspiracy was adopted in 2017 (over much protest).  Act No. 67 of 2017, *codified in part* at Articles 6 & 6-2 & Appended Tables 3 & 4, Act on Punishment of Organized Crimes and Control of Proceeds of Crime, *available at* http://www.japaneselawtranslation.go.jp/law/detail/?ft=1&re=01&dn=1&x=46&y=23&co=01&la=01&ia=03&ja=04&ky=%E7%B5%84%E7%B9%94%E7%8A%AF%E7%BD%AA&page=1.  That provision, however, applies only to certain specified crimes, of which Article 103 is not one.[3]

Therefore, it would not suffice for the government to argue that the evidence somehow establishes probable cause that Peter Taylor "ma[de] preparations for the purpose of committing"[4] a violation of Article 103 or that he, "together with one or more persons, … planned to commit an act that constitutes"[5] a violation of Article 103.  What is required is evidence sufficient to establish probable cause that *Peter Taylor himself* committed a violation of Article 103.  The current record does not contain evidence sufficient to do so and the Court should reconsider its Certification as to Peter Taylor.

---

[3] In Act No. 67 of 2017, Japan adopted legislation criminalizing for the first time the planning or plotting of 277 specified types of crimes relating to terrorism and organized crime.  The Japanese government claimed that the legislation was needed to enable law enforcement to prevent terrorism ahead of the 2020 Olympic Games and to comply with a United Nations treaty on organized crime.  Even so, this expansion of Japanese law was very controversial.  *See* Deutsche Welle, *Japan passes anti-terror law amid privacy protests* (June 15, 2017), available at https://www.dw.com/en/japan-passes-anti-terror-law-amid-privacy-protests/a-39260076.  Notably, one of the main criticisms of the adoption of a criminal conspiracy law, even in limited form, was the potential for abuse of the law by police.  Coulson, *Criminal Conspiracy Law in Japan*, 28 U. MICH. J. INT'L LAW at 887.

[4] Article 6(1), Act on Punishment of Organized Crimes and Control of Proceeds of Crime.

[5] Article 6-2(1), Act on Punishment of Organized Crimes and Control of Proceeds of Crime.

## CONCLUSION

For the reasons set forth above, we request that the Court schedule a hearing to reconsider its Extradition Certification and Order of Commitment with respect to Peter Taylor in light of the Japanese government's correction of one of the few allegations against Peter Taylor. We submit that the current record does not establish probable cause to believe that Peter Taylor committed the Article 103 violation on which Japan's extradition request is based.

Dated:  December 28, 2020

Respectfully submitted,

By his attorneys,

*/s/  Paul V. Kelly*
Paul V. Kelly (BBO No. 267010)
Jackson Lewis, P.C.
75 Park Plaza
Boston, MA  02110
Tel (617) 367-0025
paul.kelly@jacksonlewis.com


*/s/ Abbe David Lowell (by permission)*
Abbe David Lowell (*pro hac vice*)
Christopher D. Man
Zachary B. Cohen
Winston & Strawn LLP
1901 L Street, N.W.
Washington, DC 20036
Tel. (202) 282-5875
adlowell@winston.com

*/s/James P. Ulwick (by permission)*
James P. Ulwick (*pro hac vice*)
KRAMON & GRAHAM PA
One South Street, Suite 2600
Baltimore, MD  21202
Tel. (410) 752-6030
JUlwick@kg-law.com

*Counsel for Peter M. Taylor*

10

**CERTIFICATE OF SERVICE**

      I, Paul V. Kelly, certify that service of this motion was made on the above date by and through the ECF filing system.

                                        */s/  Paul V. Kelly*_____
                                        Paul V. Kelly