UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF
THE EXTRADITION OF
PETER M. TAYLOR

Case No. 20-mj-1070-DLC

**MOTION FOR RECONSIDERATION OF COURT'S JANUARY 15, 2021 ORDER**

Respondent Peter M. Taylor respectfully asks the Court to reconsider its January 15, 2021 Electronic Order (Dkt. 60) declining to reconsider its September 4, 2020 Extradition Certification and Order of Commitment (Dkt. 51, hereinafter "Certification"), specifically the Court's finding that there is "probable cause to believe that respondent assisted in the planning, financing, and execution of Ghosn's escape as alleged." (Dkt. 60.)  This finding is insufficient as a matter of law to meet the U.S.-Japan Extradition Treaty's requirement of probable cause "that the person sought has committed *the offense for which extradition is requested.*"  Treaty Art. VIII, § 3 (emphasis added).  Separate from and in addition to the improper and unprecedented nature of the application of Article 103 of the Japanese Penal Code to the facts alleged here, the record in this matter now makes clear that the Treaty's probable cause requirement *cannot* be met with respect to Peter Taylor for the further reason that the factual record does not establish probable cause even under the Government's proffered construction and application of Article 103.[1]

The offense for which Peter Taylor's extradition is requested is a violation of Article 103, which prohibits a person from harboring or enabling the escape of a criminal.  But the record does

---

[1] Again, the instant motion presupposes that Mr. Ghosn qualifies as a "criminal" within the meaning of Article 103 and further assumes that concealing Mr. Ghosn in a large black box and assisting him to bypass immigration screening before departing on a jet would constitute a violation of Article 103 where Mr. Ghosn was released on bail, there was no warrant for Mr. Ghosn's arrest and the authorities were not seeking to apprehend him (which we dispute for all of the reasons previously detailed).

not contain evidence sufficient to establish probable cause to believe that *Peter Taylor* himself harbored Mr. Ghosn or enabled his escape even if the statute applied at all.  Japan's recent uncertainty as to the inferential basis underlying its allegation of a single affirmative act by Peter Taylor providing Mr. Ghosn with something (allegedly a hotel room key) the day before Mr. Ghosn's alleged escape, and the Government's attempted articulation of the evidence supposedly establishing probable cause as to Peter Taylor in response, have served to highlight the absence of probable cause as it relates to Peter Taylor.  The Government's probable cause argument is premised on what it characterizes as "overwhelming evidence" that Peter Taylor played an "instrumental role" in "planning," "facilitating," "financing" and assisting in the execution of Mr. Ghosn's escape.  The evidence is not as "overwhelming" as the Government claims, but all of this is nevertheless beside the point because Japanese law *plainly does not prohibit* "mak[ing] preparations for the purpose of committing" an Article 103 offense or "together with one or more persons, … plann[ing] to commit an act that constitutes" such an offense.  Such prohibitions on preparation and planning apply only to certain specifically-identified crimes, ***of which Article 103 is not one***.

       The Court's probable cause holding, therefore, is irrelevant to the question at hand—*i.e.*, whether there is probable cause to believe that *Peter Taylor* harbored or enabled the escape of Mr. Ghosn in violation of Article 103.  The Court entered its Order just five days after the Government filed its Opposition (Dkt. 59), before Respondent had an opportunity to submit a reply brief rebutting the inaccurate and inapposite assertions advanced by the Government in its Opposition (many of which the Court incorporated into its Order), and before Judge Talwani had ruled on Respondent's motion in the pending habeas case to stay that proceeding and remand the issue to this Court (which ruling the Government itself had stated this Court should await before

considering Respondent's Motion).[2]  As detailed herein, contrary to the Government's argument, "additional information provided by Japan" *does not* moot Respondent's Motion and the Government's Opposition, in fact, makes clear the lack of support for a probable cause finding as to Peter Taylor.  In short, the supposition on which the probable cause claim as to Respondent is based is, in fact, inaccurate; there is not probable cause to believe that Respondent himself committed the offense for which extradition is sought; and the argument that there is probable cause to believe that Respondent "assisted in the planning, financing, and execution of Ghosn's escape" (Dkt. 60) is irrelevant under Japanese law, which does not recognize conspiracy liability for a violation of Article 103.

Accordingly, we respectfully request that the Court reconsider both its January 15, 2021 Electronic Order (Dkt. 60) and its September 4, 2020 Certification (Dkt. 51) and find that the Treaty's probable cause requirement is not established with respect to Peter Taylor.

**A.    Respondent's Motion Is Not Moot**

In its Opposition, the Government claimed Respondent's Motion for Reconsideration was moot because further investigation by Japan "has corroborated its conclusion that a room key was necessary" for Mr. Ghosn to reach the ninth floor of the Grand Hyatt Tokyo on December 29, 2019 (Dkt. 59 at 6) while repeatedly castigating Respondent and his counsel for not having disputed this factual assertion previously.[3]

---

[2] *See* Case No. 4:20-cv-11272-IT, Dkt. 70 at 6 ("The government anticipates requesting that Magistrate Judge Cabell defer consideration of Peter Taylor's motion for reconsideration until this Court has had the opportunity to rule on the Taylors' motion for remand.").

[3] *See* Dkt. 59 at 2 ("Peter Taylor and his father, Michael Taylor, have never disputed their instrumental roles in enabling [Ghosn] to flee criminal prosecution in Japan"), 3 ("Peter Taylor has never denied the fact that he needed a room key to access the floor where he was staying or the fact that he provided Ghosn with his spare key …."), 4 ("During the ensuing extradition litigation, the Taylors never contested any of the facts …."), 4 ("The petition did not contest any of the Court's factual findings or any other factual component of Japan's case against them.").

3

But the factual point the Government claims to be relevant for purposes of probable cause is *whether Peter Taylor gave Mr. Ghosn a key*, not whether a key was required to reach the ninth floor. It was Peter Taylor's act of providing Mr. Ghosn a key that was specifically alleged by the U.S. and Japanese governments in support of their argument for probable cause. (*See* Dkt. 1, ¶ 7(h); Dkt. 47 at 3; Dkt. 47-6, Part III(7), n.8 & III(11).) As articulated in its Opposition to Respondent's Motion for Reconsideration, the Government alleges that "Peter Taylor provided Ghosn with his spare key so that Ghosn could go to his room unaccompanied on the day of the escape." (Dkt. 59 at 1.)

This was not, as the Government now claims, a "tangential issue" (Dkt. 59 at 2); it was the central component of the probable cause case against Peter Taylor as it was one of the few specific things that Peter Taylor was alleged to have himself done, and the *only* thing that could be said to have enabled Mr. Ghosn to do anything (inconsequential as it may have been) on December 29, 2019. Indeed, if this issue was "tangential," then why did the Japanese government make a point of asserting it specifically when there was no direct evidence to support the allegation and instead going to the effort to construct a basis from which to justify an inference that this must have happened? And, when a subsequent witness statement contradicted the assertion on which the inference was based, Japanese authorities felt compelled to notify the U.S. Government and the U.S. Government felt compelled to notify Respondent's counsel and the Court. The U.S. and Japanese governments' submissions to the Court on the probable cause question and their own actions upon discovering contradictory evidence make clear that this is a central, and not a "tangential," issue.

Japan rests the allegation that Peter Taylor gave Mr. Ghosn "his spare room key" upon what it characterizes as an "obvious" pair of inferences: because Mr. Ghosn went to the room on

the ninth floor he must have had a key, and he "had no other option but to get the room key from Peter Taylor, who stayed at the room." (Dkt. 47-6, Part III(7) n.8.) But neither inference is "obvious," as Japan claims, and under the facts before the Court neither is supported by any evidence and, what evidence there is, weighs against both inferences.

First, even if it is true that, on December 29, 2019, one needed to insert or scan a room key to direct the elevator to the ninth floor of the Grand Hyatt Tokyo, it does not necessarily follow either that Mr. Ghosn used a key to get to the ninth floor or that Peter Taylor gave Mr. Ghosn a key. The security camera footage provided by the Japanese with their extradition request shows Mr. Ghosn getting on the elevator on the sixth floor, not in the main lobby. (*See* Exh. A at EX-Taylor, P.-00318, Image No. 105-106.) As such, Mr. Ghosn was already on the guest floors when he entered the elevator. Perhaps Mr. Ghosn simply could have gotten on an elevator where another person already had pushed the button. Or he could have obtained a key to another guest room from someone else. Accordingly, it simply is not "obvious" from the mere fact that Mr. Ghosn took the elevator from the sixth to the ninth floor of the Grand Hyatt Tokyo that Peter Taylor gave Mr. Ghosn "his spare key" or that Mr. Ghosn even had a key.

In fact, Peter Taylor *did not* give Mr. Ghosn a key to his room. (Exh. B, Declaration of Peter Taylor ¶¶ 7 & 8.) Mr. Taylor recalls receiving only a single key to his room at the Grand Hyatt Tokyo and thus would not have had an extra key to give to Mr. Ghosn in any event. (*Id.* ¶ 9.) Mr. Taylor's recollection is, in fact, consistent with the evidence provided by Japan. The witness statement from the Grand Hyatt Tokyo employee cited and quoted by the Government (*see* Doc. 59-2) states that two room card keys were issued at 11:47 a.m. (Doc. 59-2 at p. 5, ¶ 4) and the User Activity Log appended to the statement (which the Government omitted from Exhibit B to its Opposition) shows "2 keys created for Room 0933" at 11:47 a.m. on December 28, 2019.

5

(*See* Exh. C at EX-Taylor, P.-00767.)  But Exhibit 4 to Japan's extradition request includes security camera footage which the Japanese government's own report describes as showing ***only one of those keys*** being given to Peter Taylor; the receptionist gave the other key to a bellboy.  (*See* Exh. A at EX-Taylor, P.-00266, Image No. 18 ("Situation where Peter receives a card key to Room No. 933 from the clerk.") and Image No. 19 ("Situation where a bellboy receives a card key to Room No. 933 from the clerk.").)  Further, the Grand Hyatt Tokyo's User Activity Log does not show any additional keys being created at any later time.  (*See* Exh. C at EX-Taylor, P.-00767-68.)  Accordingly, irrespective of what the Grand Hyatt Tokyo's security protocols may, or may not, have been on December 28, 2019, the evidence in the record only shows Peter Taylor ever receiving a single key.  As such, the evidence does not show that Peter Taylor even had a spare key to give to Mr. Ghosn.

Indeed, when Mr. Ghosn arrived at Mr. Taylor's room on December 29, 2019, he did not use a key to enter but instead knocked and waited for Mr. Taylor to let him in.  (Exh. B, P. Taylor Decl. ¶ 8.)  If Mr. Ghosn had a key, he simply could have let himself in.

Accordingly, Respondent's Motion is not moot and the evidentiary grounds for the Japanese government's double-inference that Peter Taylor gave Mr. Ghosn a key to his hotel room is still lacking.  Far from mooting Respondent's Motion, as detailed below, the probable cause argument made by the Government in its Opposition in reliance on conclusory allegations of planning, facilitation, and other assistance outside the immediate commission of the alleged Article 103 offense make it even clearer that probable cause is lacking.

**B.    The Court's Probable Cause Finding Is of Conduct Not Constituting the Offense for Which Extradition Is Sought**

The Court's January 15, 2021 Order reasoned that "even assuming for the sake of argument that Peter Taylor did not provide Ghosn with an elevator key card, the remainder of the evidence

6

in the court's view, none of which moreover was disputed,[4] still provides probable cause to believe that the respondent *assisted in the planning, financing and execution of Ghosn's escape* as alleged." (Dkt. 60 (emphasis added).)  Even if correct, this finding does not suffice to establish the probable cause required with respect to Peter Taylor for him to be extraditable under the Treaty.

As we previously detailed (Dkt. 57 at 8-9), conspiracy to commit a violation of Article 103 is not prohibited by Japanese law.  With the enactment of controversial and long-debated reforms in 2017, Japan criminalized for the first time "mak[ing] preparations for the purpose of committing" certain crimes[5] or "together with one or more persons, … plann[ing] to commit an act that constitutes" certain crimes where such person "has arranged funds or goods, has made a preliminary inspection of relevant locations, or has performed other acts of preparation for committing the planned crime in accordance with the aforementioned plan[.]"[6]  Outside the scope of those specific crimes identified in the tables appended to these statutes, conducting amount to the planning of or preparation for a crime (including arranging for funds or goods, inspection

---

[4] In characterizing the factual allegations as not disputed, the Court makes the same error the Government does.  While it is true that the conduct allegations were not contested for purposes of the extradition proceedings, it does not follow that the allegations are not disputed (and it certainly does not follow that they are true).  Generally, the law does not permit the accused to offer evidence that contradicts that offered by the government.  *See, e.g.*, *Collins v. Loisel*, 259 U.S. 309, 316-17 (1922); *Koskotas v. Roche*, 931 F.2d 169, 175 (1st Cir. 1991).  Accordingly, the Government's refrain not only criticizes us for not doing something that the Government well knows we are precluded from doing, but seeks to draw an adverse inference from our simple compliance with the law as we understand it.  As the Government, and now the Court, have drawn significance from the absence of challenges to the factual allegations, we respond herein to certain specific factual points relevant to the instant matter.  But again, to be clear, just because we do not present competing or contradictory evidence on a given point does not mean that point is not disputed.

[5] Art. 6(1), Act on Punishment of Organized Crimes and Control of Proceeds of Crime, *avail. at* http://www.japaneselawtranslation.go.jp/law/detail/?ft=1&re=01&dn=1&x=46&y=23&co=01&la=01&ia=03&ja=04&ky=%E7%B5%84%E7%B9%94%E7%8A%AF%E7%BD%AA&page=1.

[6] *Id.* Art. 6-2(1).

locations, or performing other acts of preparation) simply does not constitute a crime under Japanese law.

If Article 103 were among the crimes to which these provisions applied, then the Court's conclusion there was "probable cause to believe that the respondent assisted in the planning, financing and execution of Ghosn's escape as alleged" would establish probable cause with respect to Peter Taylor. But Article 103 *is not* among the offenses listed in the tables appended to the prohibitions on making preparations for and planning to commit crimes. *See* Act No. 67 of 2017, *codified in part* at Articles 6 & 6-2 & Appended Tables 3 & 4, Act on Punishment of Organized Crimes and Control of Proceeds of Crime, *available at* http://www.japaneselawtranslation.go.jp/law/detail/?ft=1&re=01&dn=1&x=46&y=23&co=01&la=01&ia=03&ja=04&ky=%E7%B5%84%E7%B9%94%E7%8A%AF%E7%BD%AA&page=1.

The Government does not dispute any of this. Its only response is to assert that Japan's extradition request cites to Article 60 of the Japanese Penal Code, which provides that "[t]wo or more persons who commit a crime in joint action are all principals." (Dkt. 59 at 11.) But the allegations here as against Peter Taylor are not that he committed a crime in joint action with others. At the time Peter Taylor separated from his father, Mr. Zayek and Mr. Ghosn (around 4:00 p.m. on December 29, 2019) no one had committed any crime—jointly or individually. The alleged crime was not committed until more than seven hours later, sometime after 11:00 p.m., when the jet carrying Mr. Ghosn left Japanese airspace. And the earliest act by anyone that could arguably be said to have "enabled" Mr. Ghosn's subsequent escape took place between 8:14 p.m. and 9:57 p.m. when, as Japan alleges, "Ghosn hid in one of the big black boxes" in Michael Taylor and George Zayek's room at the Star Gate Hotel outside Osaka. (Dkt. 47-6, Part III(12).)

Article 60 refers to persons who themselves *jointly commit* the crime, for instance, where two individuals jointly commit armed robbery with one offender gathering the money or property while the other trains the gun on the victim.  Perhaps Article 60 has application to the alleged actions of Michael Taylor and George Zayek at Kansai International Airport, where the crime allegedly was committed.  But Peter Taylor was not even there for the commission of the alleged offense; indeed, he was not even in Japan at that time.  The point is that the facts alleged in support of the charge are insufficient to establish probable cause that Peter Taylor committed any crime, whether alone or in "joint action" with others.  Article 60's contemplation of "joint action" cannot be read to expand the scope of criminal liability to acts of planning or preparation; otherwise, the 2017 Act's provisions criminalizing planning and preparation for certain, specifically-identified crimes was unnecessary and the limitations contemplated by identifying those specific crimes to which they would apply are meaningless.

**C.     There Is Not Sufficient Evidence in the Record to Support Probable Cause that Peter Taylor Violated Article 103**

None of the alleged acts by Peter Taylor amount, individually or collectively, to harboring Mr. Ghosn or enabling his escape on the night of December 29, 2019, several hours after Peter Taylor last saw him.  There is no allegation, much less any evidence, that Peter Taylor harbored (*i.e.*, hid or concealed) Mr. Ghosn at any point.  Nor is there any evidence that Peter Taylor himself did anything to enable Mr. Ghosn's "escape"—he is not alleged to have brought Mr. Ghosn the box in which he concealed himself, he is not alleged to have assisted Mr. Ghosn into the box, he is not alleged to have transported that box to the airport and/or past immigration screening, and he is not alleged to have accompanied Mr. Ghosn or the box onto the airplane.  Peter Taylor is not even alleged to have been present for any of the foregoing events; indeed, he is alleged to have at

all times been more than 600 km away from the scene of the crime and, in fact, to have departed Japan altogether roughly four hours before it allegedly occurred.

The Government does not contend otherwise. Instead, the Government maintains that the evidence supports a finding of probable cause by focusing on what it categorizes as evidence of "Planning the Escape," "Executing the Escape" and "Financing the Escape." (Dkt. 59 at 9-10.) But none of that evidence establishes the requisite probable cause because it all relates to matters of planning or preparation which have not been criminalized, or to matters that occurred hours before and hundreds of kilometers away from Mr. Ghosn's escape from Japan and which did nothing to provide Mr. Ghosn with the means or opportunity to make that escape.

"Planning the Escape": The Government alleges Peter Taylor and Mr. Ghosn met on several occasions on various dates throughout 2019, and that Mr. Taylor checked into a room at the Grand Hyatt Tokyo on December 28, 2019 and "met with Ghosn for about an hour" on that day. (Dkt. 59 at 10.) The Government asserts in conclusory fashion that this "reflects the fact that Peter Taylor was deeply involved in the planning of Ghosn's escape." (*Id.*) Even if this were so, mere involvement in the planning of a crime is not sufficient for the reasons set forth in Section B above. But even if it were, the Government offers no evidence as to what any of those meetings were about, what was discussed, or what came out of them. The allegation that this reflects "planning of Ghosn's escape" is thus mere conjecture. The mere fact that the men met on various dates over a six-month period establishes nothing. In fact, Peter Taylor met with Mr. Ghosn on a number of occasions to pitch him on the use of a digital marketing company he owned to assist him in countering the negative reputational impact of the Japanese charges against him. Mr. Ghosn eventually hired the company. (Exh. B, P. Taylor Decl. ¶ 2.) Accordingly, in fact, there is not even sufficient evidence to establish probable cause to believe that Peter Taylor was involved in

10

the planning of any crime (which, for the reasons detailed above, would not establish probable cause that he violated Article 103 in any event).

"Financing the Escape": The Government further contends "the evidence indicates that Peter Taylor was the recipient of funds necessary to finance the operation and pay the Taylors for their services," citing an alleged October 2019 payment to Peter Taylor's company and alleged payments by Mr. Ghosn's son to Peter Taylor in the first part of 2020. (Dkt. 59 at 10.) The Government offers no evidence whatsoever to support its contention as to the purpose of these payments, again relying on its own conclusory assertion of a connection to Mr. Ghosn's escape. But even if there were evidence to support the Government's characterization of the alleged payments, "arrang[ing] funds or goods" in connection with planning to commit a violation of Article 103 is not within the scope of Japanese criminal law as it has adopted and implemented the concept of criminal conspiracy.[7]

"Executing the Escape": Finally, the Government argues that "[t]he evidence also reflects the fact that Peter Taylor played a key role in executing the plot to smuggle Ghosn out of Japan." (Dkt. 59 at 10.) However, the only specifics the Government points to are (a) Peter Taylor's receipt of "luggage from Ghosn's chauffer at the Grand Hyatt Tokyo's parking area" and (b) the use of his Grand Hyatt Tokyo room as "the safe house where Ghosn went to change his clothes and met up with Michael Taylor and George Zayek, who then escorted him out of Japan." (*Id.*) Neither of these actions or activities enabled Mr. Ghosn's escape.

Merriam Webster defines the verb "enable" as "to provide with the means or opportunity" or "to make possible, practical, or easy." (*See* https://www.merriam-webster.com/dictionary/enable.) Peter Taylor did not provide Mr. Ghosn with the "means" to

---

[7] Art. 6-2(1), Act on Punishment of Organized Crimes and Control of Proceeds of Crime.

escape. Indeed, he never "provided" Mr. Ghosn with anything. Further, Peter Taylor did not give Mr. Ghosn the "opportunity" to escape. Nor did he do anything to make Mr. Ghosn's escape "possible, practical, or easy."

With respect to the suitcases, the Government claims Mr. Taylor's receipt of them "enabled Ghosn to later leave his house and walk to the Grand Hyatt Tokyo without luggage in tow, which would have looked patently suspicious." (Dkt. 59 at 10.) But Mr. Ghosn's having his chauffer transport suitcases on his behalf is *just as suspicious, if not more so*. In fact, Peter Taylor agreed to a request by Mr. Ghosn that he carry a suitcase with gifts for Mr. Ghosn's family to Lebanon, as he had previously agreed to transport gifts, food or DVDs between Mr. Ghosn and his family in Lebanon. (Exh. B, P. Taylor Decl. ¶¶ 3-5.)

The Government's characterization of Mr. Taylor's hotel room as a "safe house" is an absurd characterization intended to assign some clandestine character to the men's activity which has no support in the evidence. No spy or criminal would contemplate as a "safe house" a room in a large, prominent hotel in the heart of a heavily-trafficked area in the middle of Tokyo, registered in one's own name and using one's own passport, and where all comings and goings are recorded by security cameras. Absolutely nothing about Mr. Taylor's hotel room was secret or hidden in any way, and it would in no way be suitable for concealing or hiding anyone or anything. Nor was Peter Taylor involved in any attempt to conceal or hide anyone or anything. The Government alleges Mr. Ghosn changed his clothes and met up with Michael Taylor and George Zayek at Mr. Taylor's room, but there is no allegation that anyone made any attempt to conceal their identity, disguise themselves, or do anything at all to avoid detection or identification.

Indeed, even if Peter Taylor were to have given Mr. Ghosn a "spare key [to his room] so that Ghosn could go to his room unaccompanied on the day of the escape" (Dkt. 59 at 2), that

would have done nothing to enable Mr. Ghosn's escape. Mr. Taylor could have simply come down the elevator, met Mr. Ghosn, and taken him up himself. There was no benefit to Mr. Ghosn being unaccompanied on this one occasion. In fact, the two had met and had lunch together at the Grand Hyatt Tokyo the day before in full public view. Mr. Taylor had met Mr. Ghosn's chauffer and daughter in the parking area earlier on December 29, again in full public view. And Peter Taylor and Mr. Ghosn later left his room together, again in full public view, before separating to go their separate ways. Mr. Ghosn accomplished nothing by going to Room 933 unaccompanied in this one instance.

Accordingly, nothing in the allegations or the evidence establishes that *Peter Taylor* took any action *which enabled Mr. Ghosn* to escape. He never concealed Mr. Ghosn. He never disguised Mr. Ghosn. He never misdirected, diverted, or otherwise interfered with anyone who was looking for Mr. Ghosn. He did not smuggle Mr. Ghosn past immigration officials. (Exh. B, P. Taylor Decl. ¶ 12.) He never accompanied Mr. Ghosn anywhere except to spaces in full public view and/or monitored by security cameras. He did not even accompany Mr. Ghosn to Osaka and Kansai International Airport, the point from which Mr. Ghosn departed Japan. (*Id.* ¶¶ 11-12.) In fact, by the time Mr. Ghosn made any attempt to conceal himself from anyone Peter Taylor had already left Japan several hours earlier from a completely different airport more than 600 km away. (*Id.* ¶¶ 10, 12; *see also* Dkt. 1 ¶ 7(i); Dkt. 47 at 5; Dkt. 47-6, Part III(11).) In fact, it is not even alleged that Peter Taylor *knew* what Mr. Ghosn planned or intended to do at Kansai International Airport, and there certainly is no evidence in the record that he did.

## CONCLUSION

The absence of evidence that Peter Taylor himself committed any act that enabled Mr. Ghosn's alleged escape (or even any step by Mr. Ghosn towards that escape) is fatal. The charge

for which Japan seeks to extradite Peter Taylor is harboring or enabling the escape of a criminal. To establish probable cause, Japan must show probable cause both that the offense was committed *and that Peter Taylor himself committed it*. In Respondent's Motion for Reconsideration, we pointed out that "it would not suffice for the government to argue that the evidence somehow establishes probable cause that Peter Taylor 'ma[de] preparations for the purpose of committing' a violation of Article 103 or that he, 'together with one or more persons, … planned to commit an act that constitutes' a violation of Article 103." (Dkt. 57 at 9.) Yet, tellingly, this is all that the Government could muster in support of a probable cause argument as to Peter Taylor, and the factual basis for even that is speculative and conjectural.

Accordingly, the current record does not establish probable cause to believe that Peter Taylor committed the Article 103 violation on which Japan's extradition request is based and Peter Taylor cannot be extradited to Japan under the terms of the U.S.-Japan Extradition Treaty.

Dated:  January 19, 2021

Respectfully submitted,

By his attorneys,

*/s/ Paul V. Kelly*
Paul V. Kelly (BBO No. 267010)
Jackson Lewis, P.C.
75 Park Plaza
Boston, MA  02110
Tel (617) 367-0025
paul.kelly@jacksonlewis.com

        */s/ Abbe David Lowell (by permission)*
        Abbe David Lowell (*pro hac vice*)
        Christopher D. Man
        Zachary B. Cohen
        Winston & Strawn LLP
        1901 L Street, N.W.
        Washington, DC 20036
        Tel. (202) 282-5875
        adlowell@winston.com

        */s/James P. Ulwick (by permission)*
        James P. Ulwick (*pro hac vice*)
        KRAMON & GRAHAM PA
        One South Street, Suite 2600
        Baltimore, MD  21202
        Tel. (410) 752-6030
        JUlwick@kg-law.com

        *Counsel for Peter M. Taylor*

**CERTIFICATE OF SERVICE**

    I, Paul V. Kelly, certify that service of this motion was made on the above date by and through the ECF filing system.

                                                               */s/ Paul V. Kelly*_____
                                                               Paul V. Kelly